NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACP GP, LLC, *et ano.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HOME CARE, INC., *et al.*, <br><br> Defendants. | Civil Action No.: 18-8786 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Charles Gardner's Motion to Dismiss and/or Transfer Venue pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a). (ECF No. 22). Plaintiffs have submitted an Opposition to Defendant's motion, (ECF No. 32), to which Defendant has replied, (ECF No. 34). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Motion to Dismiss and/or Transfer Venue.

## I. BACKGROUND[1]

Plaintiffs ACP GP, LCC ("ACP") and Alleon Capital Partners, LLC ("Alleon") are Delaware limited liability companies with their principal places of business in Teaneck, New Jersey. (Compl. ¶¶ 5–6). Defendants United Home Care, Inc. ("United") and Trinity Home Health

---

[1] This background is derived from the allegations in Plaintiffs' Complaint, (ECF No. 1 ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Care, Inc. ("Trinity") (collectively, "Borrowers") are Louisiana-based corporations. (Compl. ¶¶ 9–11). This dispute arises from a Loan and Security Agreement dated December 16, 2016, between Plaintiffs and Borrowers, pursuant to which Plaintiffs loaned certain "discretionary advances" to Borrowers. (Compl. ¶ 17). As collateral for the advances, Plaintiffs obtained a security interest in Borrowers' present and future accounts as well as certain chattels. (Compl. ¶¶ 18–19). The Loan and Security Agreement contains an acceleration clause, which provides that the entire balance shall, at Plaintiffs' option, become immediately due and payable on demand. (Compl. ¶¶ 25–26). Defendants DMS Healthcare, Inc. ("DMS") and John D. Jones, the sole owner of United, Trinity, and DMS, guaranteed all amounts owed to Plaintiffs on the advances and promised to pay Plaintiffs the guaranteed amounts on demand. (Compl. ¶¶ 2, 21–22). Plaintiffs further secured the advances they made to Borrowers with an interest in DMS's present and future accounts and chattels. (Compl. ¶¶ 23–24).

Plaintiffs allege that Defendant Charlie Simpson, Borrowers' former Chief Operating Officer, and Defendant Charles Gardner, Borrowers' former Controller, had executed and delivered to Plaintiffs certain Validity Guarantees dated December 13, 2016, in order to induce Plaintiffs to enter the Loan and Security Agreement with Borrowers. (Compl. ¶¶ 3, 20). In those Validity Guarantees, Gardner and Simpson warranted the validity of the collateral and indemnified Plaintiffs for any damages resulting from a breach of any statement in the Validity Guarantees or from Plaintiffs' reliance upon a misstatement or fraud on the part of any officer, employee, or agent of Borrowers. (Compl. ¶¶ 3, 20). Only the Validity Guaranty executed by Gardner is currently at issue on Gardner's Motion to Dismiss. (*See* ECF No. 22-3, Ex. A[2]).

---

[2] The Court may consider the Validity Guaranty executed by Gardner as the document is central to the claims at issue and Plaintiffs do not dispute its authenticity. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (a court may consider "undisputedly authentic documents if the complainant's claims are based upon these documents" when deciding a Rule 12(b)(6) motion).

Plaintiffs allege that Gardner and Simpson collectively misappropriated over $3.8 million from Borrowers' bank accounts and engaged in a check-kiting scheme in breach of their representations under the Validity Guarantees. (Compl. ¶ 48). Additionally, despite knowledge that Borrowers would be unable to fulfill their obligations under the Loan and Security Agreement, Gardner and Simpson continued to seek advances on behalf of Borrowers from Plaintiffs under the Loan and Security Agreement. (Compl. ¶ 47). Plaintiffs claim that Gardner and Simpson breached their respective Validity Guarantees and are liable for a portion of the damages sustained by Plaintiffs. (Compl. ¶ 30). Plaintiffs further claim that they acted in reliance on certain statements made by Gardner and Simpson in their Validity Guarantees when making advances to Borrowers. (Compl. ¶ 3).

Plaintiffs invoked the acceleration clause in the Loan and Security Agreement, and Borrowers defaulted by failing to repay the balance. (Compl. ¶¶ 25–27). Accordingly, Plaintiffs brought this action for breach of contract against Borrowers, seeking $1,661,732.40 plus interest on the advances, as well as against Gardner and Simpson for their alleged breaches of the Validity Guarantees. (Compl. ¶¶ 1, 28, 36, 49).

Gardner now moves to dismiss Plaintiffs' claims against him, generally arguing that: (i) the Court lacks personal jurisdiction over him as a Louisiana resident with few contacts with New Jersey; (ii) this Court is an improper venue for this dispute; (iii) Plaintiffs fail to state a claim for breach of contract because the Validity Guaranty is not an enforceable contract and, if it is, Gardner did not breach it; and (iv) venue should be transferred to Louisiana in the interest of justice. (*See generally* ECF No. 22-1 ("Def. Mov. Br.")).[3]

---

[3] Borrowers, DMS, and Jones (collectively, "Crossclaimants") brought crossclaims against Gardner and Simpson relating to their alleged check-kiting scheme and misappropriation of Borrowers' funds. (ECF No. 20). Crossclaimants and Gardner having jointly stipulated to the dismissal of all crossclaims against Gardner, the portion of Gardner's Motion to Dismiss that addresses those crossclaims is now moot. (*See* ECF No. 36).

3

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "*prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc.*, No. 10-2833, 2011 WL 831933, at *2 (D.N.J. Mar. 3, 2011) (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d § 1067.6 (3d ed. 2002)). The plaintiff, however, retains "the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)). "These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 F. App'x 266, 268 (3d Cir. 2005) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore

exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. "General jurisdiction results from, among other things, 'systematic and continuous' contact between a non-resident defendant and the forum state." *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009) (quoting *Int'l Shoe*, 326 U.S. at 320). No party in this case alleges that the Court has general personal jurisdiction over Gardner.

"Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of specific personal jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim-specific. *Remick*, 238 F.3d at 255 ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

**B.  Sufficiency of the Allegations**

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.

### III. ANALYSIS

#### A. Personal Jurisdiction

Gardner asserts that this Court does not have personal jurisdiction over him, such that this action must either be dismissed or transferred to Louisiana. (Def. Mov. Br. at 21–30). The Court disagrees. As mentioned above, Plaintiffs do not argue that the Court has general personal jurisdiction over Gardner. However, contrary to Gardner's assertions, the Court has specific personal jurisdiction over him. The Validity Guaranty signed by Gardner contains a forum selection clause.[4] In the Validity Guaranty, Gardner agreed that any action arising under that document "shall, if [ACP] elect[s], be instituted in any court sitting in the state in which [ACP's] chief executive office is located." (ECF No. 22-3, Ex. A). Even more explicitly, the Validity Guaranty states that Gardner "submits to such jurisdiction and waives all objections to jurisdiction or venue" in the aforementioned acceptable forums. (ECF No. 22-3, Ex. A). ACP's principal office is located in New Jersey, and ACP has instituted this action in New Jersey. (Compl. ¶ 5).

The enforeceability of a forum selection clause in diversity cases is determined as a matter of federal law. *Cadapult Graphic Sys., Inc. v. Tektronix. Inc.*, 98 F. Supp. 560, 563 (D.N.J. 2000) (citing *Jumara v. State Farm Ins., Co.*, 55 F.3d 873, 877 (3d Cir. 1995)). But "where a forum selection clause will influence a personal jurisdiction question, the validity of that clause as an element of the parties' agreement is evaluated under state law." *Park Inn Intern., LLC, v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000). As a matter of both federal and New Jersey law, forum selection clauses are presumptively valid. *Park Inn Intern.*, 105 F. Supp. 2d at

---

[4] At this stage of the litigation, the Court finds that the forum selection clause is enforceable against Gardner, notwithstanding the fact that the validity of the contract containing the forum selection clause is itself at issue.

373 (citing *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Such clauses will not be set aside unless the objecting party can establish that: (1) the clause was procured as the result of fraud or overreaching; (2) enforcement would violate the strong public policy of the forum; or (3) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *cert. denied* 464 U.S. 938 (1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989) (citing *Bremen*, 407 U.S. at 10). The party objecting to the enforcement of a forum selection clause bears the "heavy burden" of demonstrating why they should not be bound by their contractual choice of forum. *Pemaguid Underwriting Brokerage, Inc. v. Mut. Holdings (Bermuda), Ltd.*, No. 02-4691, 2003 WL 24089901, at *5 (D.N.J. June 3, 2003) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)). Since personal jurisdiction is a waivable right, the exercise of personal jurisdiction over an out-of-state party who consented to such jurisdiction pursuant to a contractual forum selection clause does not offend due process so long as the provision was freely negotiated and enforcement of the provision would not be unreasonable or unjust. *Kraft Power Corp. v. Gen. Elec. Co.*, No. 11-6073, 2011 WL 6020100, at *4 (D.N.J. Dec. 1, 2011) (citing *Burger King*, 471 U.S. at 472 n.14).

The Court finds that Gardner has not met the "heavy burden" of demonstrating why he should not be bound by the Validity Guaranty's choice of forum. First, there are no allegations that Plaintiffs secured Gardner's consent to jurisdiction through fraud or overreaching. Second, Gardner does not argue that enforcement of the clause would violate a strong public policy of the forum. Finally, enforcement would not deprive Gardner of his day in court. *See ACP GP, LLC v. Putnam Cty. Mem'l Hosp.*, No. 16-2967, 2016 WL 5109143, at *2 (D.N.J. Sept. 19, 2016)

(enforcing a nearly identical forum selection clause).

Gardner's conduct bolsters the reasonableness of the Court's exercise of specific personal jurisdiction over him. Where a party purposefully avails himself of the laws of New Jersey by entering an agreement with a New Jersey company whose effects would be felt in New Jersey, a court located in New Jersey may properly exercise personal jurisdiction over him. *See Print Data Corp. v. Morse Financial, Inc.*, No. 01-4430, 2002 WL 1625412, at *3–4 (D.N.J. July 12, 2002) (citing *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 328–29 (1989)) (exercising personal jurisdiction over out-of-state defendant who "directed a draft financing agreement into New Jersey [and] made fraudulent representations into New Jersey"). Here, Gardner directed the Validity Guaranty to ACP's address in New Jersey. (Compl. ¶ 20). As Controller for Borrowers and validity guarantor on the advances, Gardner was a sophisticated party who knew or should have known that he was entering a transaction with New Jersey companies and that the transaction would have substantial effects in New Jersey. Therefore, Gardner has sufficient minimum contacts with the State of New Jersey for purposes of specific personal jurisdiction.

Plaintiffs' claim arises from Gardner's alleged breach of the Validity Guaranty and thus arises from Gardner's contacts with New Jersey. Having executed the Validity Guaranty for the purpose of securing advances from New Jersey companies, it was foreseeable to Gardner that he could be haled into court in New Jersey for disputes relating to those advances. *See ACP GP*, 2016 WL 5109143, at *2 (concluding that "the maintenance of claims in a New Jersey federal court concerning the alleged breach of a contract entered into with an entity that is deemed to be a New Jersey citizen . . . does not offend traditional notions of fair play and substantial justice"). Therefore, the Court rejects Gardner's arguments and concludes that it has specific personal jurisdiction over him.

**B. Venue**

Gardner also argues that venue is improper pursuant to 28 U.S.C. § 1391. (Def. Mov. Br. at 21–22). The Court disagrees. "Where a defendant has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under Section 1391(a)." *Park Inn Intern.*, 105 F. Supp. 2d at 376. Gardner consented to venue in New Jersey when he "waive[d] all objections to jurisdiction *or venue*" in the Validity Guaranty. (ECF No. 22-3, Ex. A (emphasis added)). Furthermore, the Court finds that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) requires that "a substantial part of the events giving rise to the claim occurred in the district[; . . . it] does not require a majority of the events to take place [t]here, nor that the challenged forum be the best forum for the lawsuit to be venued." *Park Inn Intern.*, 105 F. Supp. 2d at 376. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New Jersey, as Plaintiffs are New Jersey companies and the agreements at issue, including the Validity Guaranty, were delivered to Plaintiffs' New Jersey addresses. *See Innovative Tech. Distrib., LLC v. Oracle Am., Inc.*, No. 11-1371, 2011 WL 1584297, at *5 (D.N.J. Apr. 25, 2011).

Alternatively, Gardner argues that even if venue is proper, this matter should nevertheless be transferred to Louisiana pursuant to 28 U.S.C. § 1404(a). (Def. Mov. Br. at 22–30). The Court disagrees. A district court may transfer a case from one proper venue to another under § 1404(a) "[f]or the convenience of the parties and witnesses" if it is "in the interest of justice," weighing a broad range of private and public interests. *Id.* at *4. The Court declines to do so here. Among the interests to be considered, "courts should place great weight on valid forum-selection clauses." *Park Inn Intern.*, 105 F. Supp. 2d at 377. The provision of the Validity Guaranty selecting ACP's choice of venue cuts strongly against transferring venue in this case. Gardner argues at length that

the Western District of Louisiana would be a more appropriate venue for this action. (Def. Mov. Br. at 22–30). However, "venue may be appropriate in multiple districts," and plaintiffs "enjoy[] the advantage [of] choosing venue, within the constraints set by § 1391." *Print Data Corp.*, 2002 WL 1625412, at *5 (quoting *Nat'l Micrographics Systems, Inc. v. Canon U.S.A.*, Inc., 825 F. Supp. 671, 679 (D.N.J. 1993)). Furthermore, all other Defendants are located in Louisiana, and no other Defendant has contested personal jurisdiction or venue. (*See generally* ECF No. 20).

## C. Sufficiency of Plaintiffs' Allegations

Moreover, the Court finds Plaintiffs have sufficiently pled their claim for breach of the Validity Guaranty against Gardner. To state a claim for breach of contract under New Jersey law, the plaintiff must allege facts demonstrating that: "(1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result." *Days Inn Worldwide, Inc. v. Shara & Sons, Inc.*, No. 13-1049, 2013 WL 5535959, at *3 (D.N.J. Oct. 7, 2013) (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)).

Here, Plaintiffs have properly pled a *prima facie* claim for breach of contract. Plaintiffs allege that they entered into a valid contract with Gardner in that Gardner executed the Validity Guaranty in favor of ACP in exchange for Plaintiffs' financial advances to Borrowers. (Compl. ¶¶ 3, 20). Gardner's obligations under the Validity Guaranty included indemnification of Plaintiffs for damages resulting from a breach of any representation in the Validity Guaranty or reliance upon any misstatement, fraud, or deceit on the part of any officer, employee, or agent of Borrowers. (Compl. ¶ 20). Plaintiffs allege that Gardner failed to perform those obligations in at least two ways. First, Plaintiffs claim that Gardner breached the Validity Guaranty's warranty of the collateral securing Plaintiffs' advances to Borrowers by, *inter alia*, personally compromising the

11

validity of that collateral by allegedly misappropriating Borrowers' funds and continuing to seek advances on behalf of Borrowers despite knowledge of their inability to repay. (Compl. ¶¶ 20, 47–48). Second, Plaintiffs claim that Gardner is liable to them for his own alleged fraud and deceit as an officer, employee, or agent of Borrowers pursuant to the Validity Guaranty's indemnification provision. (Compl. ¶¶ 20, 48). Finally, Plaintiffs have sufficiently pled that they have suffered damages as a result of Gardner's conduct. (Compl. ¶¶ 28, 30–32). Accordingly, Plaintiffs have pled all the necessary elements for breach of contract under New Jersey law.

Gardner maintains that he cannot be held liable for breach of contract because the Validity Guaranty is merely a letter and not a contract. (Def. Mov. Br. at 3, 5–7). Gardner argues that Plaintiffs never accepted the Validity Guaranty's offer or manifested intent to be bound by its terms, and therefore no contract was formed. (Def. Mov. Br. at 5–7). The Court disagrees. Plaintiffs allege that they manifested acceptance of the Validity Guaranty by executing the Loan and Security Agreement and making advances to Borrowers. (Compl. ¶ 3). At this stage of the proceedings, Plaintiffs need only "allege 'enough fact to raise a reasonable expectation that discovery will reveal evidence' in support" of their claim that the Validity Guaranty was a valid contract. *Days Inn Worldwide*, 2013 WL 5535959, at *3 (quoting *Twombly*, 550 U.S. at 556) (denying motion to dismiss a breach of contract claim where defendant argued guaranty agreement lacked meeting of the minds).

Alternatively, Gardner claims that the Validity Guaranty is unenforceable because it was not supported by bargained-for consideration. (Def. Mov. Br. at 7–8). This argument also fails. Here, the Validity Guaranty states that the promises and representations it contains were made to "induce [ACP] to make financial accommodations available to Borrowers." (ECF No. 22-3, Ex. A). In exchange for those promises, Plaintiffs did in fact make such financial accommodations to

Borrowers, thereby completing the bargained-for exchange contemplated by the Validity Guaranty. (Compl. ¶¶ 3, 17, 20). The Court therefore concludes that Plaintiffs have adequately pled that the Validity Guaranty was supported by consideration to state a claim for breach of contract against Gardner.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss and/or Transfer Venue is denied. An appropriate order accompanies this Opinion.

DATED: ~~September~~ OCTOBER 1ST, 2018

JOSE L. LINARES
Chief Judge, United States District Court